IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

R.H.,[1]

          Plaintiff,

v.                                            Case No. 20-1099-JWB

ANDREW M. SAUL,
*Commissioner of Social Security,*

          Defendant.

**MEMORANDUM AND ORDER**

Plaintiff filed this action for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits. The matter is fully briefed by the parties and the court is prepared to rule. (Docs. 12, 13, 14.) The Commissioner's decision is AFFIRMED for the reasons set forth herein.

**I. Standard of Review**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a reasonable mind might accept to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

---

[1] Plaintiff's initials are used to protect privacy interests.

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520; *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that he has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id*. at 751. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); § 404.1520(f), (g). At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that he cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of

performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487 (citations omitted).

## II. Background and Procedural History

Plaintiff applied for disability insurance benefits on November 26, 2018. (Tr. at 31.) In his application, Plaintiff alleged disability beginning February 15, 2014. Plaintiff's claims were administratively denied both initially and upon reconsideration, prompting him to request a hearing before an Administrative Law Judge (ALJ). A hearing was held in October 2019 and an unfavorable decision was issued October 30, 2019. Plaintiff exhausted his administrative remedies and has now appealed to this court.

Plaintiff is 37 years old and has three years of college education towards an accounting degree. (*Id.* at 46, 257.) Plaintiff is a veteran who last served in the Army in February 2014. (*Id.* at 258.) In 2011, Plaintiff suffered a traumatic brain injury. As a result, Plaintiff suffers from migraine headaches. Plaintiff has consistently received treatment for the headaches and takes medication. Plaintiff stated that some treatments have alleviated his symptoms. Plaintiff reported that he had daily headaches, lasting up to 20 hours. (*Id.* at 262-63.) Plaintiff has not been employed since he left the Army.

At step one, the ALJ found Plaintiff had not been engaged in substantial gainful activity since the onset date and through the date of last insured, September 30, 2019. At step two, the

ALJ found Plaintiff suffered from the following severe impairments: right shoulder dysfunction, bilateral hip dysfunction, migraine headaches, obesity, neurocognitive disorder status-post traumatic brain injury, post-traumatic stress disorder, and depressive disorder. (*Id.* at 33.) At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or exceeded any impairment listed in the regulations. (*Id.* at 34-36.)

The ALJ next determined that Plaintiff has the RFC to perform sedentary work with some physical limitations. The ALJ determined that Plaintiff could sit, with normal breaks, for six hours, and stand, with normal breaks, for two hours. Plaintiff can tolerate occasional exposure to hazards such as unprotected heights and moving mechanical parts. With respect to Plaintiff's mental RFC, the ALJ determined that Plaintiff can understand, remember and apply instructions to perform simple tasks (jobs SVP 2 and below). He can concentrate to work at a consistent pace for two-hour periods before and after customary breaks and tolerate occasional interactions with supervisors, coworkers, and the public. (*Id.* at 36.)

After formulating the RFC, the ALJ determined that Plaintiff could not perform his past work. At step five, the ALJ found that given Plaintiff's age, education, work experience, and RFC, there were jobs in the national economy in significant numbers that he could perform. (*Id.* at 47.) The ALJ sought the opinion of a vocational expert to determine what jobs Plaintiff could perform. The vocational expert testified that Plaintiff would be able to perform the following positions: assembler, production worker, and product inspector. (*Id.* at 48.)

Plaintiff asserts that the ALJ erred in evaluating his symptoms pertaining to his migraines and in finding that he can work at a consistent pace for two-hour periods as set forth in his RFC. (Doc. 14 at 2.)

**III. Analysis**

The record in this matter spans more than 3,000 pages. Plaintiff takes issue with one aspect of the ALJ's decision in this case -- the evaluation of Plaintiff's symptoms concerning his migraines.

In considering Plaintiff's subjective allegation of pain, the regulations have set forth various factors to be considered. First, the ALJ must make a determination that "there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016); 20 C.F.R. § 404.1529(c). Then, the ALJ is to evaluate the intensity and persistence of Plaintiff's symptoms. *Id.* In doing so, the ALJ is to consider the objective medical evidence, Plaintiff's statements regarding his symptoms, opinions from medical sources, and other evidence. *Id.* In considering the intensity, persistence, and limiting effects of the symptoms, the ALJ is to consider Plaintiff's daily activities; the locations, duration, frequency, and intensity of pain; aggravating factors; effectiveness and side effects of medication; treatment; measures used to relieve symptoms; other factors. 20 C.F.R. § 404.1529(c)(3). "Credibility determinations are peculiarly the province of the finder of fact and will not be overturned when supported by substantial evidence."[2] *Watts v. Berryhill*, 705 F. App'x. 759, 763 (10th Cir. 2017) (citing *Wilson*, 602 F.3d at 1144).

Turning to the record, the ALJ exhaustively reviewed the evidence concerning Plaintiff's migraines. The ALJ noted that Plaintiff has consistently complained of headaches but that the headaches improved with treatment and the objective evidence did not support disabling

---

[2] Although the Commissioner no longer uses the term credibility when discussing a claimant's subjective complaints, the previous Social Security Ruling addressing credibility, SSR 96-7p, which was superseded by SSR 16-3p, considers the same factors as SSR 16-3p. *Watts*, 705 F. App'x. at 763, n. 4.

headaches. In December 2015, Plaintiff complained of continued headaches. (Tr. at 39.) Plaintiff stated that Sumatriptan injections were helpful and taking this medication at bedtime helped his headaches stay under control. The cranial nerve examination was normal. Plaintiff was instructed to continue on medications, lose weight, and take one item off his diet weekly. (*Id.* at 39, 2155-58.) In March 2016, Plaintiff reported continued migraines but more restful sleep by using his CPAP machine for sleep apnea. He denied difficulty with basic activities of daily living. (*Id.* at 2123.) He was instructed to continue with behavioral health and to practice healthy eating and lifestyle. In December 2016, Plaintiff continued to struggle with headaches. (*Id.* at 40.) His neurological examination showed that he was alert and oriented to person, place, and date, his speech and language were normal, and cranial nerve testing was intact. The provider noted that a June 2014 MRI of his brain was unremarkable. Plaintiff's medication was adjusted. (*Id.* at 1854-56.) In January 2018, Plaintiff reported that Botox was not helping his headaches. His examination was normal and the cranial nerve testing was intact. Plaintiff denied any side effects from his medication. (*Id.* at 1860-61.) In April 2019, Plaintiff reported daily headaches. Plaintiff stated that he could function with his medium headaches but reported heavy headaches five to six times per month. Plaintiff also reported that the Sumatriptan injections would bring his headaches down to a livable level. The imaging of Plaintiff's brain was reported normal and his neurological exam was normal. (*Id.* at 2015-16.) Plaintiff's Sumatriptan prescription was refilled and Plaintiff was instructed to continue the plan of losing weight and to use the CPAP nightly. (*Id.* at 2016.)

Reviewing Plaintiff's daily activities, the ALJ noted that Plaintiff shared custody of his daughter, was taking college courses in accounting on a part-time basis while sustaining a 3.5 GPA during the relevant period, assisted his mother in painting her house, took a vacation with his daughter, planned a trip with his brother, rode his motorcycle, and attended school functions. (*Id.*

at 45-46.)  Although Plaintiff testified that he relied on his mother for assistance with daily activities, the ALJ found that testimony inconsistent with notes indicating that Plaintiff was planning to purchase his own home and move.  (*Id.* at 46.)

In evaluating Plaintiff's migraines, the ALJ stated as follows:

> Overall, the record shows the claimant consistently endorsed headaches in terms of great severity and consistency that would seemingly preclude all activities. Further, the claimant reported only some relief with injection therapy. However, he also reported he was able to take care of his daughter and attend school on a part-time basis.  Additionally, he was able to assist his mother in painting her house, ride his motorcycle and plan a road trip with his brother, take a vacation with his daughter, and attend school functions for his daughter. Physical examinations consistently show only mild weakness and imaging only showing relatively mild degenerative changes. Taking all this into consideration, the claimant's obesity along with his other physical impairments reasonably warrant the above limitations. The claimant's complete treatment records do not document the limitations he subjectively alleges or otherwise establish functional limitations that would preclude the range of sedentary exertion established in the residual functional capacity, above.

(*Id.* at 41.)

Plaintiff makes several arguments regarding the ALJ's analysis.  Plaintiff's arguments are essentially a request for this court to reweigh the evidence, which the court cannot do.  First, Plaintiff argues that the ALJ erred by discounting his subjective complaints due his activities in caring for his daughter.  Plaintiff contends that his mother assists him with the care of his daughter and that he only cares for her every other week.  The ALJ did not discount his subjective complaints of pain based only on Plaintiff caring for his daughter.  Rather, it was discounted based on all of Plaintiff's daily activities and the lack of objective medical evidence.  Moreover, the ALJ determined that Plaintiff's statement that he received assistance in caring for his daughter was not credible due to Plaintiff's activities and his plans to move out of his mother's house into his own home.

Plaintiff also argues that the ALJ erred in discounting Plaintiff's complaints due to the lack of objective medical evidence in the record. (Doc. 12 at 7.) Plaintiff does not contend that objective medical evidence supports his claim of a disabling limitation but rather argues that migraine headaches do not lend themselves to objective testing such as imaging or examinations. Plaintiff, however, does not cite any authority for the proposition that this consideration was erroneous. Clearly, the regulation regarding subjective pain requires the ALJ to consider objective medical evidence, such as physical examinations. 20 C.F.R. § 404.1529(c). Moreover, this court has previously discussed objective medical evidence regarding migraine headaches and MRI scans. *See Coffland v. Colvin*, No. 14-1115, 2015 WL 3776518, at *3 (D. Kan. June 17, 2015) (finding that the ALJ's determination that there was a lack of objective medical evidence establishing that the plaintiff suffered from debilitating migraines was supported by the record); *see also Newman v. Chater*, No. 95-1495-MLB, 1997 WL 327091, at *5 (D. Kan. Feb. 5, 1997) (discussing objective medical evidence such as physical symptoms observed by providers and results of an EEG examination). In this case, the ALJ identified several examinations in which there were normal findings. Moreover, Plaintiff's imaging has been documented as normal as discussed herein. Therefore, the determination that the objective evidence does not support a finding of debilitating migraines is supported by the evidence.

Plaintiff also takes issue with the ALJ's statement that the treatment records do not document the limitations that he alleges. In support, Plaintiff cites to Dr. Rozina Shah's opinion which precludes all work activity. (Doc. 12 at 8.) The ALJ determined that this opinion was not persuasive because it was a check box form that was inconsistent with Plaintiff's activities and provided no explanation for the answers on the form.[3]  *See Terwilliger v. Comm'r, Soc. Sec.*

---

[3] Plaintiff does not assert that the ALJ erred in evaluating the opinion under the regulations.

8

*Admin.*, 801 F. App'x 614, 623 (10th Cir. 2020) (finding that the ALJ adequately explained the little weight he gave an opinion that used a check box form).  Moreover, the ALJ noted that Dr. Shah's records showed that she was reluctant to provide an opinion without an examination and the record lacked any evidence that she conducted an examination prior to completing the form. (Tr. at 47.)  The ALJ appropriately evaluated this opinion in the context of Plaintiff's subjective complaints of the severity of his migraines.

In sum, Plaintiff argues that the factors the ALJ relied on do not "warrant overriding his consistent, undisputed migraine symptoms."  (Doc. 12 at 8.)  The Tenth Circuit has recently explained that having a "pain producing impairment does not necessarily mean a person is disabled."  *Trujillo v. Comm'r, Soc. Sec. Admin.*, 818 F. App'x 835, 844 (10th Cir. 2020). "[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." *Id.* (quoting *Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986)).  As in *Trujillo*, Plaintiff argues that his allegations regarding disabling symptoms are credible.  *Id.* Plaintiff is asking this court to reweigh the evidence and find that his complaints outweigh the evidence cited by the ALJ.  The court cannot do so.

As discussed herein, the ALJ properly evaluated Plaintiff's migraines and substantial evidence supports the ALJ's findings that Plaintiff's complaints were not entirely consistent with the record.  The court finds that the ALJ provided legitimate reasons for discounting Plaintiff's subjective complaints and supported those reasons with evidence from the record.  *See Barnhill-Stemley v. Colvin*, 607 F. App'x 811, 817 (10th Cir. 2015).

### IV. Conclusion

The Commissioner's decision is AFFIRMED.

The clerk is directed to enter judgment in accordance with this order.

IT IS SO ORDERED this 22nd day of December 2020.

            _s/ John Broomes___
            JOHN W. BROOMES
            UNITED STATES DISTRICT JUDGE